## OSBORN *v.* WINANS.

WILLS—CONSTRUCTION—FAILURE OF BEQUEST—CHARGE ON OTHER PROPERTY.

Where testator's will provided that a fund of $10,000 should be created and the interest therefrom paid to his granddaughter for life, but the estate was insufficient to produce this sum, she was not entitled to have the deficit made up out of other property otherwise devolving under the will.

Appeal from Kalamazoo; Weimer, J. Submitted January 21, 1919. (Docket No. 66.) Decided April 3, 1919.

Bill by James W. Osborn, and another, executors of the last will and testament of David B. Merrill, deceased, against Mabel Winans and others for the construction of said will. From the decree rendered, Glen E. Balch, executor of the last will and testament of Mabel Winans Balch, appeals. Affirmed.

*George P. Hopkins,* for plaintiffs.

*Harry C. Howard,* for appellant.

*John W. Adams,* for defendants Pratt.

*Walter R. Taylor,* for defendant Kalamazoo Home.

OSTRANDER, J.   David B. Merrill, of Kalamazoo, died testate January 6, 1899, leaving surviving him his widow, his third wife, a grandchild, Mabel Winans, later Mabel Winans Balch, and two nephews, Stephen B. and Clarence Pratt.   The granddaughter died testate March 15, 1914, leaving three children, who are infants.   Glen E. Balch, her husband, is executor of her last will and testament.   The will of David B. Merrill was admitted to probate February 7, 1899, and proceedings to administer the estate have since been and are now pending in probate court.   The will reads as follows:

"I, David B. Merrill, of the city and county of Kalamazoo and the State of Michigan, considering the uncertainty of human life, and being of sound mind and memory, do make, publish and declare this my last will and testament, in manner and form, that is to say:

"*First:* I do order and direct that all my just debts and funeral expenses shall be paid as soon after my decease as can be conveniently done.

"*Second:* I also direct that immediately after my decease, in case it shall not have been done before, a granite fence, twelve to eighteen inches high above the ground, shall be erected around my burial lot in Mountain Home Cemetery, said cemetery being in Kalamazoo, and I direct that a certain sum of money be paid to the trustee of the Mountain Home Cemetery corporation to procure their agreement to perpetually for my lot, and see that it is kept in good order, and to keep an iron flower stand properly painted, and filled with a choice selection of flowers to be kept on said burial lot from the first day of May to the first day of November each and every year during the existence of said cemetery corporation, and I direct that

the sum of one hundred dollars be deposited with the trustees of said cemetery corporation to draw interest at the rate of 6% per annum, said interest to be annually paid to the secretary of said corporation to compensate him for seeing that my request with reference be complied with.

"*Third:* I give, devise and bequeath unto my wife, Ida L. Merrill, the avails of my life insurance policy in the Life Insurance Clearing Co., of St. Paul, and also five thousand dollars to be paid to her within one year from the date of my decease. I also direct that the sum of ten thousand dollars be set apart, and properly loaned on real estate securities and that the interest accruing therefrom be paid to Ida L. Merrill, annually during her life time, and at her death the same ten thousand dollars ($10,000.00) remain at interest secured as aforesaid, and that the interest accruing therefrom on five thousand dollars ($5,000.00) of said amount be annually paid to the Young Women's Christian Association of Kalamazoo, and to remain in trust for their benefit during the life of the association. And twenty-five hundred dollars ($2,500.00) of the said sum shall be placed on interest for the benefit of Olivet College, principal to be paid said college within two years after her decease, and the remaining twenty-five hundred dollars ($2,500.00) of the said ten thousand dollars shall be placed at interest for the benefit of the 'Widow's Home' hereinafter mentioned.

"*Fourth:* I do hereby give, devise and bequeath to my present wife, Ida L. Merrill, the use and enjoyment of my two dwelling houses situated on lot seven (7) and eight (8) in Bronson's addition to the city of Kalamazoo, and the use of the furniture and household goods therein contained. The house on lot seven (7) to be used as a place of residence during her time of natural life. The house on lot eight (8) to be rented for her benefit. She to keep both houses in good order and repair, to pay all taxes and assessments on the same:

"I also direct the rent of my two stores on the east side of South Burdick street in the city of Kalamazoo, except so much thereof as shall be required to pay the taxes on said stores, and keep the same properly painted and in good repair, shall also to be paid to Ida

L. Merrill during her natural life. At her death I hereby request that the rents from the stores above specified shall be used for the benefit of the Widow's Home hereinafter specified.

"*Fifth:* I also give, devise and bequeath to my said granddaughter Mabel Winans during her natural life, the rents of the undivided half of the three stores I own jointly with James W. Osborn, situated on the west side of South Burdick street, in the city of Kalamazoo, except so much thereof as shall be required to pay the taxes on the said undivided half of said stores, and to keep the same properly painted and in good repair. And in case of her decease before the decease of my wife, Ida L. Merrill, I give, devise and bequeath said rents to Ida L. Merrill, subject to the payment of said taxes and cost of repair during her natural life.

"I also direct that the sum of ten thousand dollars be set apart and properly loaned on real estate securities, and that the interest accruing therefrom be paid to said Mabel Winans annually during her lifetime and at her decease, the same ten thousand dollars ($10,000.00) remain at interest secured as aforesaid, and the interest accruing therefrom be paid annually to the trustees of the Widow's Home, to use in paying the expenses of Widow's Home. In case the decease of Mabel Winans before the decease of my wife, Ida L. Merrill, said fund shall be held in trust by the administrator for the benefit of the 'Widow's Home.'

"I also give, devise and bequeath to my granddaughter, Mabel Winans, five thousand dollars to be placed at interest secured on real estate, the interest to be paid to her annually, and the principal when she shall be thirty (30) years of age.

"*Sixth:* I give, devise and bequeath to my nephews, Stephen B. Pratt and Clarence Pratt, the use of fifteen hundred dollars each, to be placed on interest on real estate securities, the interest to be paid to them annually until they each shall be thirty years of age. At that time I direct that the same shall be paid to them. Should either of said boys die before attaining the age of thirty years, I direct that the surviving one shall receive the bequest made to the deceased one. In case of the decease of both Stephen and Clarence

Pratt before this bequest shall have been paid, the bequest shall revert to my estate except so much thereof as shall be necessary for their funeral expenses.

"*Seventh:* I direct that my stock in the Merrill Milling Co., amounting to sixty-five thousand dollars ($65,000.00) shall be disposed of by my executor as soon after my decease as it can be done for a reasonable consideration. The property to be used in meeting the bequests made by me hereby.

"*Eighth:* If there shall be any part of my estate left after these bequests I have already made are paid, I give, devise and bequeath the sum of five hundred dollars ($500.00) for the Children's Home, Kalamazoo, Mich., and twenty-five hundred dollars ($2,500.00) for the Home Missionary Society of the State of Michigan, and that whatever amount there may be left, shall be disposed of, and held by the board of trustees for the Widow's Home for their benefit.

"*Ninth:* After the decease of my wife, Ida L. Merrill, and my granddaughter, Mabel Winans, I give, devise and bequeath unto the trustees of the Kalamazoo Home all the rest, residue and remainder of my estate, real and personal mixed, not otherwise disposed of, by this will for the purpose thereof, and I direct that my residence property on lots seven (7) and eight (8) of Bronson's addition to the city of Kalamazoo, be used by the said Kalamazoo Home, as a home for poor widows of good character, residents of Kalamazoo, who have no other means of support, received only on the order of the board of trustees of said home, and that all the rest and remainder of my said property and estate be used by said trustees in the support and maintenance of said home, under the by-laws, rules and regulations thereof.

"*Tenth:* At the decease of my wife, Ida L. Merrill, I give, devise and bequeath unto my said granddaughter, Mabel Winans, the use of my two dwelling houses situate on the corner of West and Lovell streets in the city of Kalamazoo, lots seven (7) and eight (8) and so much of lot nine (9) as I own, in Bronson's addition, for and during her life. And at her death I give, devise and bequeath to the Kalamazoo Home for poor widows as hereinbefore stated, and to be used under the directions of said trustees of said home.

"*Eleventh:* I hereby direct that all bequests to my wife, Ida L. Merrill, and Mabel Winans, shall be paid previous to any other bequests.

"Next in order shall be those of Stephen and Clarence Pratt. In case of any deficiency in my bequests to the Home Missionary Society, that part of my bequests to the Young Women's Christian Association shall be paid first. The Children's Home next in order, then Olivet College. After that the Home Missionary Society shall be next in order.

"*Twelfth:* I expressly empower my executor, hereinafter named, and in case of his death or disability, the person appointed as administrator '*de bonis non*' with my will annexed, to compound, compromise or allow time upon, or accept securities, real or personal, for any debt or debts due or owing to my estate. And I especially empower such person aforesaid, not only to do so, but I also give him full power to sell and dispose all or any part of the real estate of which I may die seized and possessed, except that during the life of my said wife and granddaughter, that portion thereof set apart for their use, shall not be sold without their consent and direction, but the sale thereof shall be postponed until after their death, at public or private sale, wherever the same may be situated for such price or prices and upon such terms and conditions as to him may seem best. And to grant and convey the same to the purchaser or purchasers thereof, his or their heirs and assigns, by proper instruments of conveyance, free from all liability, for or on account of the application of the purchase money.

"*Thirteenth:* I do make, constitute and appoint James W. Osborn, of the city of Kalamazoo, as the executor of this my last will and testament.

"*Lastly:* I expressly revoke all other wills and testaments heretofore by me made, and declare this to be my last will and testament.

"In witness whereof, I have hereunto set my hand and seal this twenty-second day of May, eighteen hundred and ninety-six."

In February, 1900, a bill was filed in the circuit court, in chancery, for the county of Kalamazoo to obtain a construction of certain portions of the will.

Later on, other portions of the will were construed in proceedings supplementing those first instituted. Decrees were made, one in May, 1901, one in January, 1902, and from them no one appealed.

The widow of David B. Merrill remarried, the other executor of his will died, and she is now the sole representative of the estate. In 1915, she filed a petition on the footing of the former decrees for a construction of portions of the said last will. The executor of the estate of the granddaughter also asked for construction of portions of the will of said David B. Merrill. There was a hearing, opinion and a decree which was entered October 16, 1917, from which decree the executor of the granddaughter appeals. The opinion of the court, which the decree follows, fairly presents the issues and the attitude of interested parties, and it is here set out:

"The bill in this cause was filed February 24, 1900, to obtain a construction of a will executed May 22, 1896, by David B. Merrill, deceased, who died at an advanced age in Kalamazoo, January 6, 1899, leaving real and personal property including, besides the property specifically mentioned in the will, stocks, bonds, mortgages, notes, real estate and real estate contracts, the appraised value of all which was approximately $125,000. He was survived by his widow, she being a second wife, to whom he had been married but a few years, one grandchild, Mabel Winans, about twenty years of age, the daughter of a deceased daughter by his first wife, and two nephews, Stephen and Clarence Pratt, both of whom, prior to the death of the deceased, lived in his home. Mabel Winans died March 15, 1914, having married Glen E. Balch. Testator's widow is still living. Both Stephen and Clarence Pratt are still living. The pertinent paragraphs of the will are the third to twelfth, inclusive. The purpose of this opinion does not require that they be set out at length.

"In 1891 articles of association of the Kalamazoo Home were duly executed and filed by the deceased, James W. Osborn, and Alfred J. Mills, as incorporators

under and by virtue of chapter 165 Howell's Statutes, entitled 'An act for the Incorporation of Charitable Societies.'

"James W. Osborn and Alfred J. Mills were law partners and the legal advisers of the testator. The object of such corporation was stated to be, to found a home for poor widows of good character who were residents of the city of Kalamazoo, and who had no other means of support. Six trustees were required to be elected. It does not appear that any meetings were ever held or that anything further was ever done toward perfecting the organization. The corporation has never had any endowment or assets and there never has been any reason for its existence except as found in this will.

"The testator was for many years active in business and in the affairs of the community in which he lived. His principal business was milling. He was the largest stockholder in the Merrill Milling Company.

"The will was written in long hand, admittedly under the direction of the testator himself, and without the aid of counsel. It is incapable of interpretation or execution without the aid of a court of equity in construing its more or less irreconcilable provisions.

"It is very clear that the testator believed the value of his property and particularly his milling stock to be greatly in excess of its actual worth. The milling stock instead of being of the value of $65,000, proved to be worth little or nothing.

"Fixed legacies contained in the will aggregate $33,-000, and contingent legacies $3,000. Claims were allowed against the estate amounting to approximately $14,000, making a total of at least $47,000 to be realized from the estate, or such portion as the testator supposed would be available for that purpose.

"A decree was filed May 11, 1901, construing the will in part, and reserving for further adjudication all matters and things involved in this cause not therein determined. By that decree it was adjudicated:

"1. That the third paragraph of the will is valid.

"2. That the Kalamazoo Home is a legal and valid corporation.

"3. That the Kalamazoo Home and Widow's Home are one and the same and entitled at the death of Ida

L. Merrill to the income of $2,500 mentioned in paragraph three.

"4. That the devises and bequests in paragraphs 4, 5, 8, 9, and 10 are valid.

"5. That the property bequeathed by the testator to the Kalamazoo Home should go, as provided in the will, into the hands and possession of the trustees of the corporation for the purposes expressed in the will.

"6. That the bequests and legacies made by the testator are payable first out of the proceeds of the stock held by him in the Merrill Milling Company, if the sum realized from that stock shall be sufficient, and if not, then such bequests and legacies are payable out of the general funds and properties of the estate in the order mentioned and set forth in the 11th paragraph of the will.

"In October, 1901, a petition was filed by the complainant praying for a further construction of the will. January 9, 1902, another decree was filed by which it was adjudicated that the legacies bequeathed to Ida L. Merrill and Mabel Winans had no priority the one over the other, but stand upon an equal footing and are to be paid upon that basis.

"By the latter decree as by the former it was provided that all other matters involved in this cause be continued for the further order, decree and adjudication of this court, and that the parties should be at liberty to bring said cause on for hearing at any time they might be desirous of doing so upon giving fourteen days' notice thereof, and that all further and other matters involved in this cause be reserved for the further decree and adjudication of the court. No appeal has been taken from either of said decrees. The cause is now before the court upon the petitions filed by Ida Merrill, and Glen Balch, as executor of the last will of Mabel Winans Balch, who died March 15, 1914, and the answers of Stephen B. and Clarence Pratt to both petitions, praying affirmative relief, and the answer of Ida L. Merrill to such answers praying affirmative relief.

"The widow has had the use of the two dwelling houses until the present time. The store upon the east side of Burdick street, the rents from which were bequeathed to her, has been sold, and she has had the

use of the proceeds. The legacy of $5,000, mentioned in the third paragraph of the will was paid to testator's widow four years after his death. The fund of $10,000 mentioned in the same paragraph has never been provided. Both the widow and the granddaughter, Mabel Winans, have had the use of a fund of $2,000 instead of $10,000. Allowances have been made the widow from time to time by the probate court for the care and repair of the residence property occupied by her.

"Mabel Winans has had the income arising from the proceeds of the sale of the stores upon the west side of Burdick street.

"The legacy of $5,000 mentioned in the sixth paragraph of the will was paid to her at the same time of the payment of the like legacy to testator's widow.

"After the death of Mabel Winans Balch in March, 1914, the probate court made an order in part as follows:

"'And it further appearing unto the court, upon examination of the will of said David B. Merrill, deceased, that the balance of the corpus of this trust fund should remain in trust during the lifetime of the widow of said deceased, in the event of the death of said Mabel Winans Balch prior to the death of said widow, that widow, now Ida L. Manvel, is still living.

"'It is therefore ordered that said trustee keep possession of the $2,000 corpus of said estate, during the lifetime of the said Ida L. Merrill Manvel, and that he pay unto the treasurer of the Kalamazoo Home, being the title of the Widow's Home provided for in the will of said deceased, the net income arising from said trust fund until the death of the said Ida L. Manvel.'

"An appeal was taken by both Stephen B. and Clarence Pratt from this order of the probate court to this court upon the law side. After the hearing of this cause a stipulation in writing was filed in the matter appealed from the probate court providing that the same be transferred to the chancery side of this court, and that said cause be determined upon the files and records therein without the introduction of any testimony, and as a part and in connection with this chancery suit.

"The petition of Ida Merrill Manvel prays for a construction of the will that will permit the sale of the

residence property on West street and the use of the proceeds of a part thereof for a purchase of another piece of residence property in which she may live; the payment to her of interest on the $5,000 legacy during the period beginning one year after the death of deceased and ending at the time of the payment of the legacy; the payment of interest to her upon the sum of $10,000 from one year after the death of the deceased so long as the petitioner shall live, and finally compensation as executrix and general direction from this court as to her rights and duties in the premises.

"Petitioner Glen E. Balch prays for interest upon the $5,000 legacy paid to Mabel Winans Balch for the period beginning one year after the death of the deceased and ending with the actual payment of the legacy. Answers to both petitions have been filed by Clare H. Stearns, trustee, asking allowance and settlement of his final account as trustee of both funds and the allowance of fees as solicitor.

"Stephen B. and Clarence Pratt filed answers in which they ask that the sum of $2,000 in the hands of said Stearns, as trustee, be not paid to the Widow's Home but be used for the payment of their legacies.

"The authority of this court to construe the will must not be confined or permitted to conflict with the authority of the probate court in the administration of the estate of the deceased, neither should the decree to be made now conflict with the two former decrees herein.

"Both of the former decrees herein are silent upon the question of whether or not the testator intended to make a specific devise of the remainder of the West street property to the Widow's Home after the life use thereof to the widow and Mabel Winans. If, therefore, it appears from the will and the circumstances surrounding the testator that he so intended, we find nothing in the former decrees of this court to prevent such an adjudication.

"The general rule is that construction is to be given to the instrument which will give it effect, for courts can not inquire into the propriety of any disposition that the testator sees fit to make of his property by a legally executed will so long as it is not unlawful; nor can they adopt astute construction to defeat pro-

visions claimed to be unjust. Beecher on Wills, page 216.

"The duty of this court is plain, namely, to ascertain if possible, first from the will itself, and second from the circumstances surrounding the testator, as well as from the extent and character of his property, the value thereof as it appeared to him, the relations between him and the legatees, his general intent, design and purpose in making this will.

"It is not for the court so to construe the will as to determine what the testator should or undoubtedly would have done had he not been mistaken as to the value of his property. In my opinion, it is too clear for argument that his manifest intent and purpose was ultimately to found a home for poor widows upon his homestead, and in the meantime to give his widow and granddaughter $5,000 each absolutely and the use and enjoyment of the homestead and adjoining residence property, but that only and the rents and income of a portion of the remainder of his property, or better perhaps, what he supposed was the remainder of his property.

"It is urged that paragraph 12 of the will authorizes the sale of all the real estate including the homestead and adjoining residence property. I do not so construe the will. We must read it from its four corners, and when considered as a whole and in the light of all the surrounding circumstances, including the organization of the corporation, the will fairly teems with an evident determination that after the death of the widow and granddaughter, the homestead property shall be used as and for a home for poor widows. The mind of the testator was so absorbed with that plan and purpose that it is found expressed and referred to repeatedly. Paragraph 4 of the will provided:

" 'I do hereby give, etc., the use and enjoyment of my two dwelling houses and the use of the furniture and the household goods therein contained to my present wife, Ida L. Merrill, the house on lot 7, to be used as a place of residence during the time of her natural life, the house on lot No. 8 to be rented for her benefit, she to keep both houses in good repair, pay all taxes and assessments on the same.'

"In the third paragraph, the testator directed the rent of his two stores on the east side of Burdick street to be paid to his widow during her natural life. There was clearly a distinction in his mind when he framed the several clauses of this paragraph.

"In the fifth paragraph of the will the testator directed that the sum of $10,000 be set apart, and that the interest accruing therefrom be paid to Mabel Winans during her life time, and at her decease the interest therefrom be annually paid to the trustees of the Widow's Home to use in paying the expenses of the Widow's Home.

"Then follows this language:

"'In case of the decease of Mabel Winans before the decease of my wife, Ida L. Merrill, it shall be held in trust by the administrator for the benefit of the Widow's Home.'

"The only inference to be drawn from the last provision quoted is that there could be no Widow's Home before the decease of the testator's widow, for the reason that until that time the property provided for the home would be occupied by her; having organized a corporation for the purpose of providing a home for poor widows, the testator provided some income with which to maintain the home, but nowhere any fund with which or place upon which to establish the home except his residence property.

"Paragraph 9 of the will is particularly pertinent upon this point. It is:

"'After the decease of my wife, Ida L. Merrill, and my granddaughter, Mabel Winans, I give, devise and bequeath unto the trustees of the Kalamazoo Home all the rest, residue and remainder of my estate real, personal, and mixed not otherwise disposed of by this, my will, for the purpose thereof, and I direct that my residence property on lot 7 and 8 of Bronson's addition to the city of Kalamazoo be used by the Kalamazoo Home as a home for poor widows of good character, residents of Kalamazoo, who have no other means of support, received only on the order of the board of trustees of said home, and that all the rest and remainder of my said property and estate be used by the trustees in the support and maintenance of said home under the by-laws, rules and regulations thereof.'

"Paragraph 10 provides:

" 'At the decease' of my wife, Ida L. Merrill, I give, devise and bequeath unto my said granddaughter, Mabel Winans, the use of my two dwelling houses situated on the corner of West and Lovell streets in the city of Kalamazoo, lots 7 and 8, and so much of lot 9 as I own in Bronson's addition for and during her life, and at her death, I give, devise and bequeath to the Kalamazoo Home for poor widows as hereinbefore stated and to be used under the direction of said trustees of said home.'

"The frequency with which the testator reiterated his design leaves no room for doubt as to his intent. It was his evident purpose to limit the amount that his widow and granddaughter should each receive from the corpus of his estate to $5,000, and preserve the rest, and residue thereof, subject to their use as a portion, to the residuary legatee, namely, the home for poor widows.

"The provisions for two funds of $10,000 each was made in the belief that those funds would be available and a considerable amount besides. What provisions the testator would have made had he known the actual value of his estate is not in question. Likely as not he would have been less generous both as to the legacies of $5,000 and the contemplated funds of $10,000 each.

"In my opinion the will should be construed as follows, namely:

"(*a*) Not to permit the sale of the residence property or the purchase of other property in the place and stead of it.

"(*b*) Interest should be paid both Ida Merrill Manvell and the estate of Mabel Winans Balch upon the $5,000 legacies for such period as payment thereof was deferred after one year from the death of testator.

"(*c*) The corpus of the estate should not be used for the payment of the interest on the contemplated funds of $10,000 which failed for want of property from which to create them.

"(*d*) Ida Merrill Manvel should have the use and income of the $2,000 fund now in the hands of Clare H. Stearns, as trustee, from and after the death of Mabel Winans Balch.

"(*e*) Upon the death of Ida Merrill Manvel, Ste-

phen B. and Clarence Pratt, or the survivor of them, should receive from the corpus of the estate the amount intended for them with interest from the time that they each attain the age of thirty years respectively. I find that it was the testator's intention that these nephews should share in his estate subsequent to his widow and granddaughter, but prior to all others.

"(f) After the payment of the legacies to Stephen B. and Clarence Pratt, the funds decreed to the Widow's Home should be paid. I find it was the testator's intention first to endow the home in the several amounts stated. It is quite clear that the condition of the estate after all these years will not permit of the payment of any of the other bequests mentioned, but if there should remain any estate after the payment of the bequests to the Widow's Home, then payment of the other bequests should be made in the order stated in paragraph 11, namely, the Y. W. C. A., the Children's Home, Olivet College, and the Home Missionary Society.

"(g) The final account of Clare H. Stearns, the trustee of both funds, should be allowed and settled, and his fees determined upon the settlement of the decree.

"(h) The determination of the compensation of the executrix and the matter of general direction as to her rights and duties, prayed in her petition, are in my judgment properly matters for the probate court rather than involved in the construction of the will.

"(i) All parties will be allowed attorney's fees payable out of the estate in amounts to be determined upon the settlement of the decree."

Appellant is of opinion that the court, in arriving at the conclusions stated in the opinion, proceeded upon the assumption that "the main thought in the mind of the testator was to found a home for poor widows," when he should have assumed that the primary purpose of the testator was to provide for his wife and grandchild, and that, assuming the primary purpose to be to provide for the widow and granddaughter, the corpus of the estate, that is to say, the fund received from the sales of realty, ought to be

diverted, in part, to paying the equivalent of the sum which would have been derived from a fund of $10,000 at interest. It is claimed that the interest upon a fund of $10,000, provided for in the fifth paragraph of the will, would have been $11,099.63, and that this amount was due to the granddaughter when she died.

The fund in the hands of trustee Stearns, some $20,000, is the proceeds of the sale, in partition proceedings, of the Merrill interest in the Merrill-Osborn business block. It is the proceeds of the sale of property mentioned in the fifth clause of the will, the rentals of which were bequeathed to the granddaughter. In lieu of the rent, she has been paid interest upon the sum received for the real estate. This, she having consented to the sale, or at least not being able to prevent it, seems to satisfy the provision in the will for the payment to her of rentals. It is this paragraph of the will, also, which provides for the creation of a fund of $10,000, the interest upon which is also to be paid to the granddaughter. The testator intended her to have the rent *and* the interest upon the fund to be created, but the estate was insufficient to provide this fund beyond the sum of $2,000. There is no evident purpose to charge this real estate with the payment of interest upon a fund to be created out of other property. The evidence is all opposed to such a conclusion. It is clear that neither the widow nor the granddaughter has had the annual benefit which the testator intended they should have. We find in his purpose and in the fact that it has failed no reason for charging property ultimately otherwise devolving under the will to make up the deficit.

The court arrived at proper conclusions, and the decree should be affirmed.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.